in connection with it, but none of these powers that are enumerated in prospectus were granted to either Mr. Downs or Mr. Xu. Well, the directors had all those powers, but also the observers had significant influence or outcome on what the directors did. They could influence the directors as to, maybe they didn't have the power, but they had the ability to influence it. Significantly influence it. May, M-A-Y, that's the key word, significantly influence the outcome of matters presented to the board. What does that mean? Well, it's not a mandatory provision. It doesn't say shall. There's no language that says the directors shall accept any recommendations. All right, you told us what it doesn't mean. What does it mean? They have the option to provide advice. There was no limit placed on that option. That's what they could do. You're correct, Ron. It could conceivably be for any matter that comes before the board. So they could do anything a director could do. No, they can't vote. Well, they can't vote, but except vote, they could do everything else. Is that correct? No, they can't do everything else. They had no power to form committees. They had no power to form, to set compensation. No power to call general meetings. No power to amend the articles of incorporation. The board, the observers couldn't do any of those things. But they could influence all the decisions concerning those powers. They said may significantly influence, not that they could influence. What does may mean? In that context, what does may mean? It means that they could make, I believe it means to make suggestions to the sitting board of directors. That's what I think it makes it mean. It's not a mandatory clause. And without the ability to vote, I don't believe the board observers are stepping into the shoes in any way, shape or form of the board of directors. I see my time is up. I just want to, before rebuttal, I just want to mention one other thing. May is the mere potential to offer suggestions. Without voting power does not make the board observers performing similar functions to a director. All right. Thank you, Mr. Hartzell. Mr. Tremonti. Good afternoon. May it please the court, Michael Tremonti. I'm here with my colleague, Justin Gunnell. We represent Hayden Zoo. The key stone or the touchstone here, Your Honors, in our view is the 11A3 provision. It's a very narrowly tailored regulatory scheme, which Congress fashioned to expose to liability a very narrow class of corporate actors, namely the individuals who control the company. And to the extent that we have any disagreement Does that mean the only reason this provision exists is to cover the situation where an entity does not follow the corporate formalities and actually name directors? I think it's a little bit broader than that, Your Honor. And here we agree with the district court. I think there could hypothetically be situations where corporate formalities are in fact observed, but the nomenclature is different. And so someone who doesn't actually have the title of director or nevertheless has all of the power, all the authority that is required. It's a functional test, not a nominal test. It's exactly right, Your Honor. It's a functional test. Just a bit of housekeeping. May I reserve two minutes, please? It was already. Thank you, Your Honors. And so to the extent that any courts have looked at this, to the extent that there's any guidance from a regulator, it all goes back to that touchstone. What is the regulatory scheme and is it narrow? So when courts have looked at this person's performing similar functions language, they've always said what you have to do is functionally analyze whether or not the individual that you've got in the crosshairs is actually in control of the company. And you've got this reality in the world of corporations that have on the one hand boards of individuals who can actually control the company and who have the power to do that and advisors and observers and advisory boards that don't. And there's just never been a case, and we can think of no good reason why there would be, well, why this second category of actors would be brought into the narrow regulatory mechanism of 11A3. If we allow extrinsic evidence, that doesn't help you here. I don't think it hurts us at all, Your Honor, and here's why. Extrinsic evidence would only show as to Mr. Zhu, and I believe also as to Mr. Downs, but I won't speak for him, that they didn't engage in any activity after the registration statement became effective that looks in any way like the activity of someone who controls the company. Or for that matter, just to be clear, Your Honor, I don't think they did anything in connection with the activities of this company, even trying to influence decisions of the board. So I think extrinsic evidence would only help our cause here. Whether you're, and I think we agree with the district court, that the proper analysis here is to just look to the language of the registration statement. But even if you take in evidence beyond that that's in the record, there would be nothing to support bringing Mr. Zhu and Mr. Downs within 11A3. Well, the problem might be just that, that they didn't do anything. They, unlike anyone else that was involved in working with the corporations, had the ability to attend directors' meetings and to give their opinions and so forth. No one else had that ability to attend, the right to attend board of directors' meetings and to they couldn't be fired. They were there in perpetuity. Directors you can fire, but you can't fire these people. And they were in a position to influence what happened. How do you get around that one? Sure. So, Your Honor, I think it's very straightforward. The other individuals who, of course, could have shown up at board meetings and done... Not as a matter of right they can't show up. Would have been board members. Only board members, correct. Only board members, right. And so to the extent that there was a proposition or exercise control over the company, of course, Mr. Zhu and Mr. Downs had the right, so long as the triggering events never occurred, that would have terminated their observer status to attend those board meetings and speak. But I think there, you know, the analog that leaps to mind is the difference between, on the one hand, a member of Congress and, on the other hand, a lobbyist. A lobbyist can exercise a tremendous amount of influence over all the things that Congressmen and women, but at the end of the day, they can't vote. They're not answerable to their constituents, and they don't play a role in the constitutional... But you don't have to listen to a lobbyist. You've got to... These people have the right to attend the board meeting. They do. You don't have to have a lobbyist. You don't have to listen to them. You don't have to listen to them, and they don't have to... The board members who control the company can completely ignore anything that's proposed. I don't see how the analogy is apt. I mean, how can you bear a lobbyist that has no power over what a congressman does, except to influence him if the congressman wants to listen, whereas these people have the right to be there and to express their opinion, even if you don't like their opinion? And, Your Honor, there's record evidence, for example, that Mr. Downs actually proposed a share buyback mechanism to the board, and it was rejected. And I believe that's the either of these two observers attempting to exercise influence, and their suggestion was rejected. So I think it's clear that at the end of the day here, only individuals, only persons within the language of the statute exercising control are the board members, and on the only occasion that I'm aware of where the observers proposed something, it was rejected flat out. So I see that my time is up. I just have one quick question, and I'll ask this plaintiff as well. What do we make of the fact that the district judge here said that probably there's no liability, or maybe there is no liability under 11A2? How does that play into your analysis at all? So we think it's clear that under 11A2, as the district court found, there's simply no basis of which a juror could fairly infer that Mr. Zhu or Mr. Downs were board members at the time the registration statement became effective. So whether you view it under A2 or, as I said earlier, under A3, the extrinsic evidence to our mind only helps our position. Thank you, Your Honor. Thank you, Mr. Cromartie. Mr. Rosen? May I please report? Lawrence Rosen on behalf of Obasi Investment. Mr. Gartell, Mr. Wu, and Mr. Carruthers. Do you agree that it's a functional test, Mr. Rosen? This isn't about what these folks are called. It's about what their powers are, what they do. Yes, I don't think title is determinative. I think the statute is intended to capture people who, and this was the Merce case, where they shun formal titles to avoid liability, but do have the ability to significantly influence the corporation's affairs. So you think all that matters is that they can significantly influence? Well, I think... What's the statutory language? It's... The statutory language is every person who, well, liability accrues to every person who, with his consent, is named in the registration statement as being, or about to become, a director, person performing similar functions, and a partner, or a partner. All right. So here, they're not directors, but they're, according to the lower court, persons performing similar functions, right? Yes, Your Honor. Okay, well, let's talk about the functions of a director, right? Directors vote for board action, correct? Yes, only directors may vote. All right. Could Zao and Downs vote here? No, they could not. Directors select senior officers? Directors approve senior officers. Management generally recommends them, and directors approve them. Could Zao and Downs approve the senior officers here? They could influence the selection based on their positions, because when you're the investment banker that brings a company public, you have extraordinarily influence. You're the gatekeeper to the capital markets. You're the gatekeeper to investors. You're the help create the window to the market, and so you have a lot of influence to get them more money, to help with their financing. But you can influence the selection of senior officers, but you don't vote to select them, right? You don't actually have a vote, but you have... What about executive compensation? Do directors control executive... Do they set executive compensation? Directors approve it, yes. And did Zao and Downs have the power to approve the executive compensation? They had the ability to significantly influence and sway the board's approval of compensation. So they could suggest or recommend to the directors whether to approve, but they didn't have a vote on that. They could make... They can't vote, but they can push them and use their influence, both as the investment banker. Don't forget Mr. Zao was not only the stock promoter, a shareholder, an early shareholder who got shares cheap early on. He orchestrated the whole company. He created the BVI structure, this wholly owned foreign entity structure through this Hong Kong company. He controlled... He was the sole director and controlled the Hong Kong company that controlled the Chinese operations. So these guys have a lot of influence over how this company was going to operate. No doubt, no doubt. Influence the prime movers behind it, right? You would argue, I guess. Absolutely. Raising the capital. Raising the capital. Promoting the enterprise. Promoting the enterprise, yeah. But all of that, I don't know how that helps you satisfy the statutory language. And isn't it the case that we need to be careful here and not construe a statute like this in a very capacious way because it is essentially a strict liability statute? Well, Your Honor, it's a negligent statute as to these individuals. As to the issuer, to that, it's strict liability. As to these folks, they have an affirmative defense of a reasonable investigation, reasonable due diligence investigation that they looked into the corporation and that they had no reason to believe the prospectus was false or misleading. The judge denied the motion for summary judgment, so they didn't prove, they didn't show that there wasn't a question of fact that they're doing a reasonable investigation. So that's the first thing. The second thing is, I don't think the judge acted in a capacious way. If you looked at his decision, it's very, very strictly construed, the statute. He looked at each word, interpreted each word, gave it its dictionary meaning and ascribed, you know, that it didn't expand at all, just said, this is what the dictionary says this means. Significant influence means a great deal of influence, a measurably large amount, whether it's direct or intangible. I'm with you on the influence. I think the record is sort of replete with influence, but what I'm struggling over is how does influence get you to performing similar functions? Well, so, Your Honor, I understand. If directors were in the business of influencing corporate officers, and influencing corporate policy, it seems you have a slam dunk. But my understanding is that directors actually set corporate policy. They don't just influence it. Directors have power. They have real power, and that power comes with the vote. In fact, they're fiduciary duties. And these guys, you know, they had a fiduciary duty to the, not even to the company, but to the underwriter, right? Isn't that part of the- Not to the underwriter. Or isn't that part of- They had a contractual obligation to the underwriter. But, Your Honor, may I address that? Because that's an important issue, and that's part of the defendant's position, and I think it's important to debunk it. The right to vote, only directors will ever have the right to vote, just directors. If you say a person has to have the right to vote in order to be liable under that statute, the statute's rendered meaningless, because only directors have that right. No, because you could have all kinds of enterprises that don't use the word director that imbue, call them, let's say instead of being called directors, they're called partners, or called controllers, or, you know, let's say some crafty person was trying to do an end run around the statute and avoided the use of the word directors.  You're going to be in the crosshairs. But, Your Honor, I, you know, I know other companies, there's a company called, I'm working on it, I won't mention the name of it, they have a partnership, it's a public company, also Chinese, and they have a board of directors. The partnership has no right to vote. It has no right to vote. All it can do is recommend people for what- It gets one recommendation from the board of directors, and that's it. That's only directors vote. That's the way corporations work. Only directors vote. And so, if you require that, you've rendered that privilege of the statute meaningless. And that's, I guess- There's only one problem with your argument. It's very crafty. I mean, I appreciate your saying that these people have, are really making, can influence, influence what's going on here. But the problem is, anyone in this case, or in corporations, can come in and influence the board of directors. You can be a salesman in the place, you can be a vice president, you can be anything at all, and you can influence what the directors are going to do. So that, for you to say, well, they have this, you know, the influence and so forth, but the point of view is, everyone has influence. These people here had, were ordained to influence what the voters do, but they couldn't vote. That's right. And the fact that they couldn't vote- Only directors can vote. And so, if you limit it to voting, you've wiped the statute out. No, no, no, no, no. It's the same thing. I respectfully- Only offices and directors have fiduciary- I don't understand that argument, because you could call them partners. You could call them all kinds of things and give them the power to vote. But under a BVI corporation, only directors can vote, right? It's corporate law, right? So you have- But if somebody, if someone was, you know, setting up a fly-by-night operation and, you know, wanted to, you know, perpetrate a fraud, this is intended to prevent frauds, right? This is exactly what we have, is a fly-by-night corporation, and this is exactly what the legislative intent is, is to capture these guys who created- I mean, this company was dead on arrival months before the IPO. It was defaulted on its loans. So why would anyone- Why would anyone invest in it, then? Ask Mr. Xu why he let this. He was the one who was bringing the information from China to the lawyers to put into the prospectus. He was the go-between, right? He was the person with the signer on the bank account. He was the one, the only signer on the bank account when 3.8 million in cash was withdrawn. Cash withdrawal was not a check. It was a cash withdrawal, and he was the only person who had access. So this is the type of thing it's supposed to capture. People who have control- So you sue them for, you know, fraud, fraudulent conveyance, et cetera, et cetera, right? I mean, this is a regulatory statute that targets people who are performing the functions of directors, and we've got to make that determination, right? And here- But isn't it true that both Zhao and Downs, that their loyalties, they're really aligned here with the placement agent? Isn't that fair to say? Is Downs- Isn't that part of the problem? Downs is aligned with the placement agent, but Zhao is aligned with himself. He's, you know, he's in a different position. All right, and people performing the functions of directors have fiduciary duties to the company, and they have to act on the behalf and behest of the company, not on behalf of themselves, like Mr. Downs. Your Honor, there are no fiduciary duties involved here. These two had no fiduciary duties, and if you're not an officer and you're not a director, there is no fiduciary duty. That's the tenet of corporate law. But how does that help you? That is yet another data point that says these people are not like directors. What it means, what it means is if you require fiduciary duty or the ability to vote, you've rendered the statute meaningless. You've taken the word- Maybe that's where we should go. Maybe this statute is so vague that it's vague and amorphous that it's unconstitutional, because it doesn't really tell you who's really liable here, because anyone can influence, as I mentioned, anyone can influence the board of directors, and the directors would say, well, go fly a kite. I don't want to listen to you, which they can do with these people. So that the mere fact that you can influence something doesn't make you a director. The director has the power. The person that's the influence, your adversary mentions lobbyists. They have influence. You don't want to listen to them. They have nothing. You're, at the end of the day, it's a question of fact for the finder of fact. Is something, does this person, is this person similar to that person, right? That's a question of fact. Well, they have no power. No power, so how could they be similar? They have the ability. They say in the prospectus that they have the ability to significantly influence the outcomes of matters- And so that's a janitor who could come up and say, I want to give you some advice on how to clean the building. But does he really have the ability to do that? They listen to everyday employees. They take market surveys from employees. Is he the guy who controls the operations through the Hong Kong entity? What about the fact issue? I think you may raise an important issue here, Mr. Rosen. What are the disputed facts? What would the jury, if it were to go to a jury, what would they be asked to discern here as a matter of fact? I think it's a fairly straightforward fact. Did these individuals, were they named as being persons performing functions similar to the directors? It's very simple. So you- It sounds like a question of statutory interpretation, you just quoted the statutory language and that seems like something we need to do. But the law is to instruct, you instruct the jury, these are what directors are, these are what their functions are, and it's up to you, jury, did what these people perform- All right. Were their role similar to the director's role? If I were the trial judge, then my jury instructions would say something like this. Directors vote for board action. Do you find, as a matter of fact, that Zhu and Downs voted for board action? Directors select senior officers. Do you find, as a matter of fact, that they selected senior officers? That's the kind of jury instruction that would happen? I think directors do more than just- And where would we stop? I think directors do more than just select. What they do is they formulate the policy and strategy of the corporation, the direction. They decide things like, should we make a- Should we do a- Should we go into this business? Should we go in this business? Should we spend- Should we withdraw $3.8 million from this bank account? Should we do another offering? All these things are things that these people have the ability to influence. And when you influence something, you may not actually have the right to do the same thing. And remember, the statute doesn't say you have to be identical. You don't have the identical power. I think they have to admit, and they have admitted, they have the ability to influence. So I'm still struggling with what the jury would be asked to decide. They've conceded, I think, we'll double check, that they have the ability to influence. And their answer is, under this statute, the ability to influence is not the same thing as perform similar- perform the functions of a director. And what I'm asking is, is that not a legal determination for us to say that those are the same things, you win, or those are different things, they win? I think any time you ask somebody, it's more like asking somebody, is that negligent? Would a reasonable person do that? It's the same as saying, does this look like that? Not if it's a question of statutory interpretation. It's strictly a question of law. It doesn't go to the jury. Judge Hartman wants to ask you, how can you charge a jury in a case like this, if a jury could turn out either way? When you're dealing with statutory interpretation, the statute only can't turn out two ways. It's got to turn out one way. I think you give the jury a fair, balanced description of the various roles that a director plays in a corporation and say, were these people named as being individuals performing similar functions as a statutory interpretation, the legal definition of a director? So you think this is a jury question? Yes, absolutely, Your Honor. I think that the trial judge was right when he said there's enough evidence here to create a genuine issue, a material fact, as to whether these persons perform similar functions as directors. We look beyond the registration statement? I think... Because I don't think the trial judge said we should just look at the registration statement. I think that the jury should look beyond the registration statement because a director's... board observer's powers and influence and ability to control and manage before the registration statement is filed can create a strong inference that those abilities, that management or control will continue after the registration is filed based on their position and then afterwards, their conduct afterwards is indicative of whether they really did have those powers, whether they really had that ability to manage the affairs of the corporation. And I think here, both before and after, especially Mr. Zhao, I mean, he was a primary mover and promoter of this company, an orchestrator before and then afterwards, he controlled the assets of the company. He controlled the bank account and caused the spending, the withdrawal of the money. So I think it's important to let the jury look at that and I think that's one thing on remand. I think to request the court affirm the decision denying the summary judgment and instruct at trial that the jury can look outside the perspective. Thank you, Mr. Rosen. Thank you, Your Honor. Mr. Marshall, rebuttal. To follow up on the last point, evidence in front of a trial, in front of a jury on what the meaning of A3 is, is what the prospectus says. And that says, that looks to me like a statutory interpretation would improperly delegate to a jury the role of a judge. So I just don't think that's accurate. And is, excuse me, is the matter as simple as a statement that if there is no right to vote, that's pretty much the end of the question. Given the broad powers that are specifically laid out in the prospectus as to these directors and that they exercise those power for voting, I think it can be the end of the inquiry. The plaintiffs have spent a lot of time in their brief talking about all these other things that supposedly Mr. Zao and Mr. Downs did. Even though we believe the court shouldn't go there, I want to point out two things. One, the statement, and Mr. Zao's counsel can speak to it if he wants, but the statement that Mr. Zao controlled the bank account is simply not accurate. The record represents that we have in our reply brief show that that's not accurate. And when Mr. Downs, we talked about his, the proposal Mr. Downs made was something the plaintiff said, that's not accurate. What Mr. Downs did on behalf of Anderson and Strug was the underwriter, and it says it right in the email, is that the underwriter is suggesting a stock buyback. That's all that happened. And they ultimately didn't go through. So I just want to clarify those two points. And you don't deny, do you, that your client had the power to influence, significantly influence? I think you're equating the word may with power, and I don't agree with that. Ability to significantly influence. He had the ability to make suggestions. Which might have significantly influenced the company. I mean, in theory, in theory, these two board observers, if they were really smart or their advice was really sound, or perhaps they were very influential people who exercised, you know, Svengali powers. I mean, the board in theory could follow every recommendation that they made. Just like, just like the board in theory could follow every recommendation that the Chinese council, who's listed in the prospectus, gave advice to the board of directors. And I don't think.  So that's what you have to acknowledge. That's a possibility. Of course, it's a possibility. But your, I guess your point is, it's also a possibility that they'd be completely ignored. Yes. And the fact, and the fact that there's a pretty large delta between them exercising Svengali-like control over the company or being completely ignored indicates that they can't be performing functions similar to directors. Is it that simple? I believe it's that simple, Your Honor. I believe it's that simple. Without the power to vote, they cannot direct or step into the shoes of directors or act like directors, and that should be the end of the inquiry. What's the meaning of the statute? What is your meaning of this statute? Well, if we look at the brief discussion. In other words, you say we should write a legal opinion saying that under these circumstances, it's not within the statute because the statute talks in terms of what being within its, within its statutory purview. The statute talks about those who are about to become directors, those who are directors, or those who are performing similar functions to directors. The two cases that I've ever looked at this language, the Mersey case and the Lockheed case, talk about that language was set up for situations where corporations don't name specific individuals to act as directors, but those individuals are in fact acting as directors in sort of a de facto determination. That's not what we have here at all. Well, the statute then sweeps into it who? Only people that are actually performing the actions of a director. In other words, have the right to vote, is what you're saying? With or without a title, as long as they're performing those direct... Okay. That's what the statute... So your position is with or without the vote, whether it's obvious or not obvious, that you're not within the purview of the statute? Well, we're not within the purview of the statute because we have no authority to vote or actually direct the affairs of the corporation. Without that, I don't think we fall within it. Can you read section 11 as targeting or determining who was in a position to ensure that the representations made to the public were truthful in the prospectus? Well, there's different categories within section 11. Are you talking about section 1183? 1183. Those who are operating the company have that ability to manage and be the gatekeepers, to make sure the information in the prospectus is accurate. Those who are simply board observers, who do not have power, don't have that ability. And the reason for naming them in the prospectus then is? Well, the underwriter, particularly with a new company, a board observer is someone there to just keep an eye on things for the benefit of the underwriter. They don't know if I do sherry duties to any stockholder, unlike the directors. They can't be removed for cause, unlike directors. Thank you, Mr. Hutzel. Mr. Tremonti. Your Honor, my colleague who just spoke, I think, addressed everything that I had planned to address. So as much as I'd like to have the last word, it almost never happens. Unless the court has further questions, I have nothing further to add. You got a minute and a half. I can't resist. All right. What I'm struggling with is this notion that inability to vote is sufficient to carry the day for you. And I'm wondering if, you know, what if your client had the ability to select senior officers to set executive compensation, right? I mean, setting executive compensation is one way to wield a lot of influence over a company, is it not? I agree, Your Honor. So what if they didn't have a, you know, what if there were a hybrid situation where they had some ability to vote on some things that they hadn't, or didn't have the ability to vote, but they controlled executive compensation? Your Honor, I could imagine a case that would be more difficult to interpret, given the language of the provision at issue in 11a3. This is not that case. The disagreement that we have with the district court is exceedingly narrow. Every step of the analysis I think we agree with. But here, the notion that you would leave to the jury this question, given the evidence of what is in the registration statement, there are, I believe, 20-some-odd specific powers that are enumerated for the board members, for the directors. It includes everything, right? To your point, Your Honor, it's not even close to one of these potentially more ambiguous cases. Even without a bright-line rule on these facts, with this registration statement, every single meaningful power is reserved exclusively to the directors. Our clients can only observe and have the potential, as the court has articulated, to significantly influence, but not any of the specifically enumerated powers that you would need to control the company. I know you don't agree with this, but if this was a fraud and a flim-flam operation, if we agree with your reading of the statute, does that mean that Mr. Rosen's clients are without a remedy? That there's this lacuna in the law here that provides victims of this sort of thing with no Your Honor, definitely not. There are any number of other statutory and common law causes of action that could be brought, and in fact, were brought and rejected or abandoned in this case. This is one very narrow provision that targets a very specific class of corporate actors who control the company and gives plaintiffs the ability to sue them under what is essentially a strict liability statute, standard. There are other ways to get at individuals and entities that are engaged in or utilized for Maybe not if they're foreign nationals, though. And therein lies the problem, perhaps. I don't have at my fingertips a catalog of all potentially useful causes of action, but I have been involved in enough cross-border cases, both civil and as a prosecutor, a federal prosecutor. I think there are any number of ways to go after foreign bad actors, both civilly and criminally, and I don't think that's a problem we face here. I think the bigger problem we have here is you've got a situation where a district court on a record that's very clear, that's not close, decided in just the last step of the analysis to put the question of interpreting the statute in the hands of the jury, which is going to create mischief because now your regulatory scheme could turn out differently every single time it goes to trial, and you could have observers in this courtroom who don't have any of the powers of directors held liable under it, and observers in another courtroom on the same exact facts. You're going to have a jury come to a different conclusion, and that's just not, it's just not appropriate. Thank you, Mr. Tremonti. Thank you. Thank you, counsel, for the excellent briefing and argument. We'll take the matter under advisement.